# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

ANTHONY WAYNE WRIGHT,

        Defendant-Appellant.

UNPUBLISHED
October 9, 2018

No. 338920
Muskegon Circuit Court
LC No. 17-000425-FH

Before: BOONSTRA, P.J., and O'CONNELL and TUKEL, JJ.

PER CURIAM.

Defendant, Anthony Wayne Wright, appeals by right his jury trial convictions for second-offense possession with intent to deliver less than 50 grams of a controlled substance, MCL 333.7401(2)(a)(*iv*) and MCL 333.7413(2), and felon in possession of ammunition, MCL 750.224f(6). The trial court sentenced Wright to 60 months to 40 years' imprisonment for each conviction. We affirm.

Police officers assigned to the West Michigan Enforcement Team (WEMET) used a confidential informant to conduct a controlled buy of crack cocaine from Wright. One of the police officers obtained a search warrant, and the WEMET officers searched Wright's apartment. Police officers recovered ammunition, crack cocaine, twist ties, and a ledger containing names and numbers in Wright's apartment. Wright also admitted to selling crack cocaine. Wright challenges the lawfulness of the search, comments made by the prosecutor during closing argument, and information contained in the presentence investigation report (PSIR).

## I. SEARCH AND SEIZURE

Wright challenges the validity of the search warrant, arguing that the trial court erred by denying his motion for a *Franks*[1] hearing to challenge the contents of the affidavit accompanying the search warrant. Wright further argues that the evidence obtained during the search of his apartment should have been suppressed because the warrant was not supported by probable cause, contending that the confidential informant had only made one controlled buy and that his

---

[1] *Franks v Delaware*, 438 US 154; 98 S Ct 2674; 57 L Ed 2d 667 (1978).

48-hour-old information was stale. We disagree. "Whether to hold an evidentiary hearing based upon a challenge to the validity of a search warrant's affidavit is committed to the discretion of the trial court." *People v Martin*, 271 Mich App 280, 309; 721 NW2d 815 (2006). When reviewing that ruling, as well as a trial court's ruling on a motion to suppress, we review the trial court's fact findings for clear error and its legal conclusions de novo. *People v Unger*, 278 Mich App 210, 243; 749 NW2d 272 (2008); *Martin*, 271 Mich App at 309. We read a search warrant and the attached affidavit "in a common-sense and realistic manner" to determine whether the warrant established probable cause. *People v Russo*, 439 Mich 584, 603; 487 NW2d 698 (1992) (quotation marks and citation omitted).

The United States and Michigan Constitutions prohibit unreasonable searches and seizures and require a showing of probable cause to issue a search warrant. US Const, Am IV; Const 1963, art 1, § 11. The "exclusionary rule, modified by several exceptions, generally bars the introduction into evidence of materials seized and observations made during an unconstitutional search." *People v Hawkins*, 468 Mich 488, 498-499; 668 NW2d 602 (2003). "Probable cause exists when the facts and circumstances would allow a reasonable person to believe that the evidence of a crime or contraband sought is in the stated place." *People v Waclawski*, 286 Mich App 634, 698; 780 NW2d 321 (2009). An affidavit supporting a request for a search warrant "must contain facts within the knowledge of the affiant rather than mere conclusions or beliefs." *Id*. If the affidavit relies on information supplied by a confidential informant, it must contain sufficient facts showing that the "information supplied was based on personal knowledge and that either the unnamed person was credible or that the information was reliable." *People v Echavarria*, 233 Mich App 356, 366; 592 NW2d 737 (1999). The fact that the police previously used information from the informant with success bolsters the informant's credibility and reliability. *People v Stumpf*, 196 Mich App 218, 223; 492 NW2d 795 (1992).

Probable cause asks whether the information clearly names the objects of the search and where and when they are likely to be found. *Stumpf*, 196 Mich App at 226. "It cannot be assumed that evidence of a crime will remain indefinitely in a given place." *Id*. Accordingly, staleness is a factor to weigh in determining if there is probable cause to search. *Russo*, 439 Mich at 605. The age of the information should be considered in the context of other variables, "such as whether the crime is a single instance or an ongoing pattern of protracted violations, whether the inherent nature of a scheme suggests that it is probably continuing, and the nature of the property sought, that is, whether it is likely to be promptly disposed of or retained by the person committing the offense." *Id*. at 605-606.

An affidavit accompanying a search warrant is presumed to be valid. *Martin*, 271 Mich App at 311. If a search warrant affidavit contains false statements, "evidence obtained pursuant to the warrant must be suppressed if the false information was necessary to a finding of probable cause." *Stumpf*, 196 Mich App at 224. To obtain an evidentiary hearing to challenge statements made in an affidavit alleged to be false, the defendant must first show "that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and [that] the allegedly false statement [was] necessary to the finding of probable cause . . . ." *Martin*, 271 Mich App at 311 (quotation marks and citation omitted). A conclusory challenge does not warrant a hearing, and the defendant must show "more than a mere desire to cross-examine." *Martin*, 271 Mich App at 311 (quotation marks and citation omitted). "The invalid portions of an affidavit may be severed," and no hearing is required if the

remaining contents of the affidavit support a finding of probable cause. *People v Ulman*, 244 Mich App 500, 510; 625 NW2d 429 (2001).

Wright failed to make a preliminary showing that the search warrant affidavit contained any false statements warranting an evidentiary hearing. Wright produced no proof that statements in the affidavit were false or that these allegedly false statements were made knowingly and intentionally or with reckless disregard for the truth. Wright's conclusory assertions demonstrate nothing more than a desire to cross-examine the confidential informant. Accordingly, the search warrant affidavit retains its presumed validity, and the trial court did not abuse its discretion by declining to hold a hearing to inquire into its validity.

Although Wright claims to be challenging the veracity of the statements made in the affidavit, his challenges are aimed at the reliability of the confidential informant, including the informant's identity. Wright further maintains that the confidential informant made only one controlled buy 48 hours before the police officer obtained the search warrant. Wright misinterprets and minimizes the contents of the affidavit. First, the police officer who prepared the warrant and affidavit explained that he previously worked with the confidential informant to make two controlled buys of crack cocaine. This statement helped to establish the informant's reliability. The police officer then noted that he received information from the informant in the last 48 hours that he could purchase crack cocaine from Wright's home. The affidavit then described the informant's controlled buy of crack cocaine from Wright's house in detail, including the affiant's observation of the informant's entry into Wright's home with money and no drugs and his departure from Wright's home with drugs and no money. The affidavit then states that the informant told the police officer that he had previously bought drugs from the same house, where he knew Wright lived, and that Wright told him he could buy crack cocaine from him "at any time." The controlled buy reinforces the informant's statements about Wright and strengthens his credibility. Contrary to Wright's assertion on appeal, these statements show a continuing pattern of illicit behavior, further demonstrating that the confidential informant's 48-hour-old information was not stale. In sum, the affidavit described sufficient credible, reliable facts to give rise to probable cause and the issuance of the search warrant. In sum, we hold that an evidentiary hearing on the statements in the affidavit was not warranted and that the warrant was supported by probable cause.

## II. PROSECUTORIAL MISCONDUCT

Wright argues that the prosecutor made comments at trial that constituted prosecutorial misconduct, depriving him of his right to a fair trial. Generally, this Court reviews a claim for prosecutorial misconduct de novo and the underlying findings of fact for clear error. *People v Brown*, 279 Mich App 116, 134; 755 NW2d 664 (2008). We review unpreserved claims of prosecutorial misconduct for plain error affecting substantial rights. *Id*. Under the plain error rule, a defendant must establish that error occurred, the error was clear and obvious, and that it affected his substantial rights. *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999).

The test for prosecutorial misconduct is "whether the defendant received a fair and impartial trial." *People v Watson*, 245 Mich App 572, 586; 629 NW2d 411 (2001). We "consider issues of prosecutorial misconduct on a case-by-case basis by examining the record

and evaluating the remarks in context, and in light of defendant's arguments." *People v Thomas*, 260 Mich App 450, 454; 678 NW2d 631 (2004).

Wright challenges the prosecutor's description of defense counsel's arguments as "red herrings" and "lawyer games." These comments do not require reversal because they were made in direct response to the defense's arguments. The defense first accused the prosecution of playing "lawyer games" with the jury, and the prosecutor defined and used the phrase "red herring" to respond to the defense's attempt to distract the jury by presenting it with insignificant facts, such as Wright's knowledge that a neighbor living down the street from him also sold drugs. The prosecution's comments were properly directed at the defense's arguments.[2]

Alternatively, Wright alleges that his trial counsel was ineffective for failing to object to the prosecutor's comments. We disagree. "Whether a person has been denied effective assistance of counsel is a mixed question of fact and constitutional law." *People v LeBlanc*, 465 Mich 575, 579; 640 NW2d 246 (2002). "This Court reviews findings of fact for clear error and questions of law de novo." *People v Heft*, 299 Mich App 69, 80; 829 NW2d 266 (2012). Wright did not preserve this issue, however, so "our review is limited to mistakes apparent from the record." See *id*. at 78.

To prove ineffective assistance of counsel, the defendant must show that counsel made an error that was prejudicial to the defendant. *People v Pickens*, 446 Mich 298, 313-314; 521 NW2d 797 (1994). "Failing to advance a meritless argument or raise a futile objection does not constitute ineffective assistance of counsel." *People v Ericksen*, 288 Mich App 192, 201; 793 NW2d 120 (2010). In this case, defense counsel's failure to object to the prosecutor's comments was not ineffective because those comments did not constitute misconduct. Therefore, Wright has not demonstrated ineffective assistance of counsel.

## III. PRESENTENCE INVESTIGATION REPORT

Wright argues that this Court should order the PSIR to be corrected to say that he was charged with possession with intent to deliver a controlled substance rather than its current description of delivery or manufacture. We disagree. We review this unpreserved issue for plain error. *Heft*, 299 Mich App at 78. The information contained in the PSIR "is presumed to be accurate unless the defendant effectively challenges the accuracy of the factual information." *People v Grant*, 455 Mich 221, 233-234; 565 NW2d 389 (1997). The information contained in the PSIR should be accurate because the Department of Corrections relies on the PSIR to make critical decisions regarding a defendant's status. *People v Uphaus (On Remand)*, 278 Mich App 174, 182; 748 NW2d 899 (2008).

---

[2] Wright's argument that the prosecutor's use of the phrase "red herring" requires reversal is incorrect. See, e.g., *People v Dobek*, 274 Mich App 58, 67; 732 NW2d 546 (2007) (concluding that the prosecutor properly characterized the defense's arguments as "red herrings" in response to the defense's arguments that the prosecution ignored potentially problematic evidence).

In this case, Wright has not shown that the PSIR contains inaccurate information.  The statute of conviction treats possession with intent to deliver the same as delivery or manufacture, punishing the offenses in terms of the amount of controlled substance involved rather than the defendant's method of handling the controlled substance.  See MCL 333.7401(1) and (2).  In addition, the Prosecuting Attorneys Coordinating Council (PACC) Warrant Manual uses the same phrase, "delivery/manufacture," for all iterations of the offense, and it designates different codes for the amounts described in MCL 333.7401(2)(a) only.  These designations are consistent with the statute's differentiation based on the amount only.  In this case, the PSIR uses the standard PACC code and heading and designates the correct amount of less than 50 grams, consistent with Wright's conviction under MCL 333.7401(2)(a)(*iv*).  Therefore, Wright has not shown that the PSIR is inaccurate, and no correction is necessary.

We affirm.

/s/ Mark T. Boonstra
/s/ Peter D. O'Connell
/s/ Jonathan Tukel