*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

JAMES GRANT MORGAN, JR.,

        Defendant-Appellant.

UNPUBLISHED
April 09, 2025
9:33 AM

No. 368062
St. Clair Circuit Court
LC No. 22-000792-FH

Before: YATES, P.J., and O'BRIEN and FEENEY, JJ.

PER CURIAM.

A drug task force conducted a warrant-based search of the house at 1036 Minnie Street in Port Huron. While searching the basement, law-enforcement officers found a shotgun, scales with drug residue, ammunition, a dog, and two debit cards bearing the name of defendant, James Grant Morgan, Jr. Outside the house, the officers found a pair of black sandals near a basement window, and then they found defendant hiding near the house and apprehended him after a brief chase. As a result, defendant was convicted of possession of methamphetamine, MCL 333.7403(2)(b)(*i*); being a felon in possession of a firearm (felon in possession of a firearm), MCL 750.224f(1); being a felon in possession of ammunition (felon in possession of ammunition), MCL 750.224f(3); resisting or obstructing a police officer, MCL 750.81d(1); and two counts of carrying a firearm during the commission of a felony (felony-firearm), MCL 750.227b. On appeal, defendant argues that some of his convictions were not supported by sufficient evidence and that the trial court gave the jury inadequate instructions. In addition, defendant raises several issues in a Standard 4 brief.[1] We affirm.

---

[1] "A 'Standard 4' brief refers to a brief filed on behalf of an indigent criminal defendant pursuant to Michigan Supreme Court Administrative Order No. 2004-6, Standard 4, 471 Mich c, cii (2005)." *People v Lowrey*, 342 Mich App 99, 103 n 1; 993 NW2d 62 (2022).

## I. FACTUAL BACKGROUND

On March 22, 2022, a warrant-based search at 1036 Minnie Street in Port Huron turned up methamphetamine, scales, a shotgun, a dog, and debit cards in defendant's name in the basement. The search warrant resulted from a two-month investigation after a confidential informant reported that defendant possessed methamphetamine in the basement of the house. Defendant did not own or rent the house, but he stayed in a small area in the basement. During the execution of the search warrant, defendant fled the house through a basement window, but he was apprehended nearby in the wake of the search.

During the search, officers found a small seating and sleeping area in the basement at 1036 Minnie Street. In that area, the officers seized a shotgun, ammunition, and two digital scales. One of the digital scales contained methamphetamine residue. A dog was sleeping in the basement by the seized items. After the search, defendant admitted that he had been at 1036 Minnie Street on March 22, 2022, that the dog in the basement belonged to him, and that he used methamphetamine. Also, defendant did not disclaim ownership of the digital scales.

At trial, the defense contended that there was an insufficient nexus between defendant and the items in the basement because defendant was not staying in the basement on March 22, 2022. A witness for the defense who had leased the house for 10 years testified that, although defendant had previously stayed in the basement, defendant had not stayed there for a while before the search on March 22, 2022. The witness explained that several people had stayed in the basement through the years and left items there, so, consequently, numerous items belonging to other people were in the basement. In addition, the defense asserted that the small amount of methamphetamine residue on the digital scale was insufficient to establish defendant's guilt for possessing methamphetamine.

Defendant's four-day jury trial took place in May 2023. The jurors unanimously convicted defendant of possession of methamphetamine, felon in possession of a firearm and of ammunition, resisting or obstructing a police officer, and two counts of felony-firearm. The jury chose to acquit defendant of maintaining a drug house. After the trial court sentenced defendant to serve terms of imprisonment for the various offenses of conviction, defendant appealed of right.

## II. LEGAL ANALYSIS

On appeal, defendant argues through counsel that there was insufficient evidence to sustain his convictions for drug, gun, and ammunition possession, and that the trial court provided the jury with inadequate instructions on the drug-possession charge. In a separate Standard 4 brief filed by defendant on his own behalf, he asserts that he was deprived of grand jury review and that he was afforded ineffective assistance of counsel. We shall address these arguments in turn.

### A. SUFFICIENCY OF THE EVIDENCE

Defendant challenges the sufficiency of the evidence supporting his possession convictions concerning methamphetamine found on a digital scale in the basement as well as the shotgun and the ammunition seized from the basement. We review de novo those challenges to the sufficiency of the evidence. *People v Speed*, 331 Mich App 328, 331; 952 NW2d 550 (2020). When analyzing whether sufficient evidence supports a conviction, we must view all the evidence in the light most

favorable to the prosecution and decide whether a rational trier of fact could find that the elements of the crime were proven beyond a reasonable doubt. *People v Miller*, 326 Mich App 719, 735; 929 NW2d 821 (2019). "[A] reviewing court is required to draw all reasonable inferences and make credibility choices in support of the jury's verdict." *People v Nowack*, 462 Mich 392, 400; 614 NW2d 78 (2000). We will first address defendant's challenge to the conviction for possessing methamphetamine, and then we will turn to his challenges to the convictions for felon in possession of a firearm and felon in possession of ammunition.

### 1. POSSESSION OF METHAMPHETAMINE

To support a charge of possession of methamphetamine under MCL 333.7403(2)(b), the prosecution must prove the defendant "knowingly or intentionally" possessed methamphetamine. *People v Baham*, 321 Mich App 228, 247; 909 NW2d 836 (2017) (quotation marks omitted). To prove possession, the prosecution must show that defendant had "dominion or right of control over the drug with knowledge of its presence and character." *Id*. (quotation marks and citation omitted). "Possession may be actual or constructive." *Id*. (quotation marks and citation omitted). Defendant was not found in possession of the methamphetamine on the digital scale seized during the search, so the prosecution's theory at trial was that defendant had constructive possession of the controlled substance. Constructive possession exists if the totality of the circumstances indicates a sufficient nexus between the defendant and the contraband. *People v Wolfe*, 440 Mich 508, 520; 489 NW2d 748 (1992), amended 441 Mich 1201 (1992). A person's mere presence at a location where drugs are found is insufficient to prove constructive possession. *Id*. Instead, some additional connection between the defendant and the drugs must be shown. *Id*. Constructive possession can be proven by circumstantial evidence and reasonable inferences arising from the evidence, and it is a factual question for the jury. *People v Johnson*, 293 Mich App 79, 83; 808 NW2d 815 (2011). Minimal circumstantial evidence may satisfy the intent element of a crime. *People v Smith*, 336 Mich App 297, 308; 970 NW2d 450 (2021).

Viewed in the light most favorable to the prosecution, the evidence established defendant's guilt beyond a reasonable doubt on the charge of possession of methamphetamine. As a threshold matter, defendant suggests that what he describes as a "trace amount" of methamphetamine found on the digital scale cannot sustain his conviction. But defendant has not contested the findings of an expert witness that the visible residue on the digital scale contained methamphetamine. Under MCL 333.7214(c)(*ii*), "[a]ny substance which contains any quantity of methamphetamine" meets the requirement for a violation of the law. Thus, defendant's suggestion that there was insufficient evidence to support his conviction because of the small amount of methamphetamine on the scale necessarily fails.

The evidence offered at trial allowed the jury to reasonably infer that defendant had control over the basement area where the digital scale with methamphetamine residue was found. During surveillance conducted before the execution of the search warrant on March 22, 2022, the police observed defendant at the house approximately one hour before the search took place. Defendant escaped through a basement window in an effort to avoid arrest. Although the officers found that the basement was cluttered, there was a pathway to a small seating and sleeping area. In that area, officers found the digital scale with methamphetamine residue along with two debit cards and mail bearing defendant's name. Also, defendant's dog was asleep in the area. In a statement made to the police, defendant admitted that he was at the residence on March 22, 2022, and that he owned

the dog. Further, defendant did not deny ownership of the digital scale. The reasonable inferences arising from the evidence were sufficient to establish a nexus between defendant and the basement, which in turn enabled the jury to find beyond a reasonable doubt that defendant had dominion and control of the methamphetamine residue on the scale. Also, during his police interview, defendant admitted that he used methamphetamine, lending additional support to the prosecution's claim that defendant had constructive possession of the digital scale with methamphetamine residue.

Defendant's challenges, including reliance on the witness whose testimony he presented, do not affect the sufficiency of the evidence. *People v Unger*, 278 Mich App 210, 222; 749 NW2d 272 (2008). The jurors heard the testimony of the defense witness, and defense counsel presented arguments that relied on the defense witness's testimony, but the jury nonetheless returned a guilty verdict on the charge of possession of methamphetamine. To be sure, the defense witness testified that defendant was no longer living in the basement when the warrant was executed and that other past residents had left items in the basement. But the defense witness acknowledged that defendant could have been staying in the basement without the witness's knowledge. The jurors were entitled to believe or disbelieve the defense witness's testimony, and we will not interfere with the jury's role of determining "the weight of the evidence and the credibility of the witnesses." *Id*. at 222. Instead, we must defer to the jury's verdict if sufficient evidence supports it. In this case, we find sufficient evidence to sustain the verdict on possession of the methamphetamine residue found on a scale in the basement.

## 2. FELON IN POSSESSION OF A FIREARM AND AMMUNITION

The jury convicted defendant, who was an admitted felon, of unlawfully possessing a gun and ammunition found in the basement. Felon in possession of a firearm and felon in possession of ammunition are both offenses governed by MCL 750.224f. The elements of felon in possession of a firearm are "(1) the defendant is a felon who possessed a firearm (2) before his right to do so was formally restored under MCL 28.424." *People v Bass*, 317 Mich App 241, 267-268; 893 NW2d 140 (2016). The elements of felon in possession of ammunition are no different, except a defendant charged with that offense must have possessed ammunition, rather than a firearm. MCL 750.224f(3). Here, defendant does not dispute that he was a felon who could not possess a firearm or ammunition, so he challenges only the element of possession. "[A] defendant has constructive possession of a firearm if the location of the weapon is known and it is reasonably accessible to the defendant." *People v Johnson*, 293 Mich App at 83 (quotation marks and citation omitted).

Viewing the evidence in the light most favorable to the prosecution, we conclude that the evidence supported defendant's convictions for unlawfully possessing the firearm and ammunition found in the basement. The evidence supporting constructive possession of the methamphetamine residue on a scale in the basement likewise establishes defendant's constructive possession of the gun and the ammunition in the basement. The presence of defendant's dog and his two debit cards in close proximity to the shotgun and the ammunition in the basement enabled a jury to reasonably infer that defendant had control over the area where police found the shotgun and the ammunition. The shotgun was on top of a pile of clothing in the basement and "right next to where [defendant's] dog was sleeping on a bed." Thus, the record contains sufficient evidence to sustain defendant's convictions for felon in possession of a firearm and felon in possession of ammunition.

## B. JURY INSTRUCTIONS

Defendant faults the trial court for giving inadequate instructions to the jury for the offense of possession of methamphetamine. The trial court, however, was commendably careful in dealing with the jury instructions. First, before calling for the jury to resume trial proceedings on May 11, 2023, the trial court asked counsel: "Did you have an opportunity to meet to review potential jury instructions?" That prompted a discussion about which jury instructions should be given. Second, later that day, after the trial court denied defendant's motion for a directed verdict of acquittal, the trial court again broached the subject of jury instructions, leading the attorneys through each of the jury instructions under consideration. Third, after the trial court read its final instructions and then excused the jurors, the trial court asked each attorney: "any objection to the way this Court charged or instructed the jury?" Defense counsel tersely responded: "I'm fine with the way the instructions are read." By expressly approving the jury instructions, defendant waived appellate review of any claim of instructional error. *People v Kowalski*, 489 Mich 488, 504; 803 NW2d 200 (2011); see also *People v Spaulding*, 332 Mich App 638, 653; 957 NW2d 843 (2020). His waiver extinguished any error, leaving nothing to review. *People v Carter*, 462 Mich 206, 216; 612 NW2d 144 (2000).

## C. DEFENDANT'S STANDARD 4 BRIEF

In his Standard 4 brief, defendant presents two issues. First, he contends that the charges against him should have been reviewed by a grand jury. Second, he accuses his trial attorney of providing ineffective assistance of counsel. Neither argument has any merit.

## 1. CONSTITUTIONAL GRAND JURY REQUIREMENT

Defendant contends that the trial court violated the Fifth Amendment of the United States Constitution by permitting the case to proceed to trial without requiring that the prosecution obtain an indictment from a grand jury. "To preserve for review by this Court a constitutional-error claim that implicates a defendant's due-process rights, the issue must be raised in the trial court." *People v Anderson*, 341 Mich App 272, 279; 989 NW2d 832 (2022). Defendant failed to preserve a due process claim in the trial court, so our review is limited to a search for plain error that affected the substantial rights of defendant. *People v Carines*, 460 Mich 750, 752-753, 763-764; 597 NW2d 130 (1999)

Defendant acknowledges that the United States Supreme Court has held that the Fourteenth Amendment of the United States Constitution does not impose the Fifth Amendment's grand jury requirement in felony cases on the states. *Hurtado v California*, 110 US 516, 534-535; 4 S Ct 111; 28 L Ed 232 (1884). See also *Apprendi v New Jersey*, 530 US 466, 477 n 3; 120 S Ct 2348; 147 L Ed 2d 435 (2000) (The Fourteenth "Amendment has not . . . been construed to include the Fifth Amendment right to 'presentment or indictment of a Grand Jury.' "). Defendant insists *Hurtado* should no longer be deemed viable, and he asks this Court to reevaluate the United States Supreme Court's reasoning and holding. But we are bound by the United States Supreme Court's decisions that construe federal law, "including the Constitution." *People v Lewis*, 501 Mich 1, 7; 903 NW2d 816 (2017). Therefore, defendant's argument is meritless.

## 2. INEFFECTIVE ASSISTANCE OF COUNSEL

Defendant's final claim involves the ubiquitous allegation that his trial attorney provided him with ineffective assistance of counsel. Specifically, defendant contends that his trial counsel should have contested the search warrant for 1036 Minnie Street because the information contained in the supporting affidavit was insufficient to establish probable cause for the reason that it lacked reliability and credibility. Defendant did not raise this claim in a motion for a new trial or a request for an evidentiary hearing, so our review is confined to mistakes apparent on the record. *People v Heft*, 299 Mich App 69, 80; 829 NW2d 266 (2012). A challenge based on ineffective assistance of counsel presents a mixed question of fact and constitutional law. *People v Solloway*, 316 Mich App 174, 187; 891 NW2d 255 (2016). This Court reviews for clear error the trial court's factual findings, and questions of constitutional law are reviewed de novo. *People v Shaw*, 315 Mich App 668, 671-672; 892 NW2d 15 (2016). In this case, however, defendant's failure to raise the issue in the trial court means we have no findings of fact or conclusions of law to review on appeal.

To prevail on his claim of ineffective assistance of counsel, "defendant must show that (1) counsel's performance fell below an objective standard of reasonableness and (2) but for counsel's deficient performance, there is a reasonable probability that the outcome [of the trial] would have been different." *People v Trakhtenberg*, 493 Mich 38, 51; 826 NW2d 136 (2012). The effective assistance of counsel "is presumed, and the defendant bears a heavy burden to prove otherwise." *People v Mack*, 265 Mich App 122, 129; 695 NW2d 342 (2005). Therefore, the defendant "must overcome the strong presumption that defense counsel's performance was born from a sound trial strategy." *Trakhtenberg*, 493 Mich at 52. "This Court will not substitute its judgment for that of counsel regarding matters of trial strategy, nor will it assess counsel's competence with the benefit of hindsight." *People v Rockey*, 237 Mich App 74, 76-77; 601 NW2d 887 (1999). An attorney's "[f]ailure to file a suppression motion is not per se ineffective assistance; a defendant must still demonstrate that his lawyer's performance was objectively unreasonable and that 'but for' that deficient performance, the outcome of the trial would have been different." *People v Serges*, ___ Mich App ___, ___; ___ NW3d ___ (2024) (Docket No. 355554); slip op at 14.

"Both the United States Constitution and the Michigan Constitution guarantee the right of the people to be free from unreasonable searches and seizures." *People v Moorman*, 331 Mich App 481, 485; 952 NW2d 597 (2020). A search warrant must be supported by probable cause in order to justify a search. US Const, Am IV; Const 1963, art 1, § 11. "Probable cause exists when the facts and circumstances would allow a reasonable person to believe that the evidence of a crime or contraband sought is in the stated place." *People v Waclawski*, 286 Mich App 634, 698; 780 NW2d 321 (2009). When an affidavit claims to provide probable cause, the affidavit must contain facts within the knowledge of the affiant, as opposed to mere conclusions or beliefs, and the affiant may not just draw inferences, but must instead state the matters that justify drawing the inferences. *People v Martin*, 271 Mich App 280, 298; 721 NW2d 815 (2006). The affiant's experience may be regarded as relevant to the establishment of probable cause. *Waclawski*, 286 Mich App at 698.

Under MCL 780.653, probable cause may be based on information supplied by an unnamed individual whenever there are "affirmative allegations from which the judge or district magistrate may conclude that the person spoke with personal knowledge of the information and either that the unnamed person is credible or that the information is reliable." "The personal knowledge element should be derived from the information provided or material facts, not merely a recitation

of the informant's having personal knowledge." *People v Stumpf*, 196 Mich App 218, 223; 492 NW2d 795 (1992). "If personal knowledge can be inferred from the stated facts, that is sufficient to find that the informant spoke with personal knowledge." *Id*. Beyond that, an independent police investigation that verifies information provided by an informant can support issuance of a search warrant. *Waclawski*, 286 Mich App at 699.

Here, the affidavit was authored by Deputy Sean Egan, who had completed several relevant narcotics training courses, averred that he had been involved in investigating illegal drug activities in St. Clair County for more than 20 years, and had been involved in "numerous illegal narcotics related arrests." The affiant described the confidential informant as "credible and reliable," and also averred that the informant "advised members of the [drug task force] of information referring to local drug dealers," and "has provided information about locations throughout the County of St. Clair that were involved in receiving and distributing illegal controlled substances." Deputy Egan averred that "[t]hrough personal knowledge and/or [drug task force] investigation the information has proven to be both current and accurate." Thus, Deputy Egan specifically cited the informant's reliability, see *Stumpf*, 196 Mich App at 223, and experience, which were relevant in establishing probable cause. *Waclawski*, 286 Mich App at 698.

Further, Deputy Egan explained how independent investigation supported the information provided by the informant. See *id*. at 699. The informant identified defendant by his first and last names, "James Morgan," identified defendant from a photograph, and reported that defendant "is selling large amounts of illegal controlled substance throughout St. Clair County." Within 30 days of the execution of the search warrant, the informant stated that "he/she could purchase a quantity of illegal substance" from defendant and, as a result, the drug task force arranged a controlled buy. After being "issued a quantity of pre-recorded DTF buy funds," the informant went to the identified location, left the location "[a]fter a short period of time," responded directly back to a member of the task force and "turned over a quantity of suspected illegal controlled substance." The informant told task force members "he/she had purchased the illegal controlled substance" from defendant at 1036 Minnie Street. Deputy Egan averred that, on the basis of his training and experience, "the substance purchased did have the same nature and consistency as the illegal controlled substance sought to be obtained during the controlled buy."

Approximately 36 hours before the warrant was executed, a member of the task force "was contacted by a credible and reliable confidential informant who advised that he/she would purchase a quantity of illegal controlled substance from" defendant, and, as a result, the task force members arranged another controlled buy. After being "issued a quantity of pre-recorded DTF buy funds," the informant went to the identified location, left the location "[a]fter a short period of time," and "responded directly back to a member of the DTF and turned over a quantity of suspected illegal controlled substance." The informant told the task force members that "he/she had purchased the illegal controlled substance" from defendant at 1036 Minnie Street. Deputy Egan averred that, on the basis of his training and experience, "the substance purchased did have the same nature and consistency as the illegal controlled substance sought to be obtained during the controlled buy." Those two successful controlled buys supported the determination that the confidential informant was reliable. See *People v Head*, 211 Mich App 205, 209; 535 NW2d 563 (1995).

Given the information contained in the search warrant affidavit, including information that was based on the task force's independent investigation, the affidavit plainly included affirmative

allegations establishing that the informant "spoke with personal knowledge of the information and either that the unnamed person is credible or that the information is reliable." MCL 780.653(b). Consequently, defendant's belated complaint about the search warrant lacks merit. Any challenge to the validity of the search warrant would have been meritless, so it would not have resulted in a successful motion to suppress. Therefore, defense counsel's decision not to challenge the validity of the search warrant was not objectively unreasonable. Failure to "advance a meritless argument or raise a futile objection does not constitute ineffective assistance of counsel." *People v Ericksen*, 288 Mich App 192, 201; 793 NW2d 120 (2010). Thus, defendant's claim of ineffective assistance of counsel on that basis necessarily fails.

Affirmed.


/s/ Christopher P. Yates
/s/ Colleen A. O'Brien
/s/ Kathleen A. Feeney